Chief Justice Bibb
delivered the Opinion of (he Court.
On the second of December, 1816, articles of agreement were signed and sealed between Legrand of the one part, and Baker, Boles and Profather of the other part, by which the latter sold and covenanted to deliver to the former, certain quantities of flour, pork and lard, at stipulated prices, by the fifteenth of February, 1817, at the Lower Blue Licks; and the said Legrand also Agreed to take three Orleans boats, at one hundred dollars each; Legrand covenanted to pay for the flour, pork, lard and boats, in Kentucky banknotes, two-thirds of the agreed prices to be paid upon do *236 livery, the residue in one hundred and twenty dayá thereafter, in bis notes, to be executed payable at the branch bank at Paris.
Logrand’s declaration in covenant.
Defendant’s special pica.
Plea of covenants performed.
In June, 1817, Legrand sued upon this covenant; averred that he attended at the Blue Licks, on tiie 15th February, 1817, and was then and there ready to pay tiie two-thirds &cí and assigns for breach on tiie part of the defendants, that they were not present and did not deliver the said merchandise then, or at any time since-
The defendants pleaded i First, that tiie defendant Win. Boles, had received from the plaintiff a writing, which they pleaded as a release of the action. It is useless to set forth this plea oi- the writing, the plea upon its face is bad, and shews that the writing Was no release nor bar to the action, and was after-wards abandoned.
Seconder That the piáintiff did ndt attend in person bn the 15th of February, 1817, or by agent, at the Lower Blue Licks, to receive the said merchandise, and ready to pay two-thirds of the price, in Kentucky bank notes, and give bis notes for the residue; and that he did not pay $400 on the 15th of February, $800 on the 19th of March, and $778 on the 5th of June, in the year 1817, or in any other manner comply with his part of the covenant as the plaintiff had alleged in his declaration.
To these pleas the plaintiff demurred, but his de-iilurrer was overruled. By leave of the court he withdrew his demurrer, and amended Ills declaration, by averring that he paid to the defendants, $400, on the 15th February, $800, on the 19th March and $778, on the 5th June, in part of the merchandise.
In September, 1819, upon filing tiie amendment to the declaration, the defendants, by leave of the court, withdrew the first plea, (of release,) and insisted on the second, that the plaintiff was hot ready &c. on his part; the plaintiff insisted on his demurrer; it was sustained; the defendants amended their second plea so as to deny, (as above set forth,) the averments of readiness on the part Of the plaintiff. *237 in bis original declaration, as well as the payments averred by the amendment. The plaintiff took issue to the country, on the second plea, as so a-inended.
Trial, verdict and judgment for plaintiff: judgment reversed.
New trial; verdict for plaintiff,
New trial
Grounds of the motion for the new trial.
Affidavit of Mr. Wick-liffe to shew surprise,
Thirdly, The defendants pleaded covenants performed, and on this an issue was joined to the country.
Upon the issues thus joined upon pleas No. 2 and 3, denying the plaintiff’s readiness &c. and of covenants performed, a trial was had at September term, 1819, and the plaintiff had verdict and judgment. This judgment Was reversed upon appeal, as reported among the decisions of fall term, 1821, (Litt. Select cases, 253.)
At the March term, 1822, of the circuit court, the plaintiff produced the opinion of the Court of Appeals, which was entered of record; at the June term, 1822, the cause was continued, and at September term, 1822, the cause was again tried and the.plaintiff had verdict and judgment.
In the progress of the trial the defendants, by their counsel, moved the court to instruct the jury as in case of a non suit; which motion was overruled, and the defendants excepted. At another day of the term the defendants moved for, and obtained a new trial; to this the plaintiff filed his bill of exceptions.
The causes moved for a new trial were:
Eirst, Surprise in the trial.
Secondly, That the verdict is contrary to the evidence.
Thirdly, The evidence did not warrant the verdict.
fourthly, Because of the misdirection of the Judge to the jury.
'The affidavits to shew the ¡surprise, are these: The affidavit of Mr. Wickliffe, one of the attorneys for defendants, states that he was absent when the cause was tried; that thé defendants relied entirety *238 upon him for information when the cause would bo tried, and was requested by the defendants originally, when employed, to write to Millersburg; that after the former trial, the cause was carried to the Appellate Court, and there reversed, by reason of a mistake committed by him, in putting into the bill of exceptions, the month of March instead o.f February, in stating William Morton’s testimony; that last fall, being satisfied of this mistake, and having no doubt of the fact, he promised Mr. Morton to state his conviction of the mistake to the court, which he did, but the Court of Appeals refused of themselves, to correct the mistake in the record,' but said if he would correct the mistake, the court would take back the record, but he did not think himself authorized to correct the mistake without the consent of his clients; he' wrote to them, but did not receive the answer before the court adjourned; that he informed the court the case might remain suspended until he wrote to his clients, and the counsel for Legrand said he hoped it would be so suspended; that he supposed the opinion luid remained so suspended, and was “strengthened in his opinion from the fact that when the opinions of the Court of Appeals, in which he was counsel and had been successful, were sent him by the clerk of the Court of Appeals, the opinion in Legrand and Boles was not among them, nor had the deponent the least idea the cause was finally disposed of until some time this year, he was told by a Deputy Sergeant, that he had an execution against Legrand for costs;” that “he had not the slightest knowledge or suspicion, according to the best of Ins recollection and belief, that the opinion of the Court of Appeals had ever been returned to this court, or that the cause was ever docketed for trial, and states positively, that if he ever liad, that it had entirely escaped his recollection, and that he heard with much astonishment and surprise, that in his absence, a verdict had been taken for Legrand in said suit; that had he-of known that the cause was returned, he should, as he firmly believes, not only have advised his clients, but sent them subpoenas for their witnesses. He was absent from court on account of the situation *239 and illness of Mrs. Parker; that Mr. Hawes and liira-self had dissolved partnership some time since; he did not expect Hawes to .attend to the preparation ot this suit, nor does he believe his clients expected him to do so; hut he had asked Mr. Hawes and Maj. Barry, during his absence, to superintend his affairs in court until his return. That he was apprised himself of the variance between the testimony as stated on the record, and the statement which Mr. Morton would make, and should have directed his clients to prepare by witnesses, to disprove the fact that Legrand was at the Lower Blue Licks ready to pay the money, as alleged in the declaration, had he have known the suit was set for trial.”
Mr. Hawes’ ■ av,t"
Defendant’s a aavit‘
the affidavit of Mr. Hawes, the other attorney for defendants, states: “He had read the opinion of the Court of Appeals, which he believed to be conclusive as to the merits of the case, not knowing or imagining there was a variance between the proof on the former trial, and the statement of it as recorded in the hill of exceptions; that this affiant, to he sure that no advantage should be taken of the absence of Mr. Wickliffe, asked Mr. Haggin if he had any additional proof to that offered on the former trial, to which Mr. Haggin replied he had not; this affiant then observed that the bill of exceptions contained the evidence offered on the former trial, and that we could save time by reading the testimony as therein taken down; to which Mr. Haggin did not reply, as the jury was just rising to be sworn. But tliis affiant fully believed that Mr. Haggin would not object to a proposal which, as he believed, would not prejudice either party, as the witnesses, no doubt, would give the same statements as formerly.” That after the jury was sworn the affi-ant learnt for the first time, the mistake which had been committed in the bill of exceptions, and Win. Morton, when introduced, proved that the bill of exceptions mistaled his testimony.
The defendants made affidavit that they relied on Mr. Wickliffe to advise the defendants, from time to time, of wliat preparations and when to make them. That the last communication they had from *240 their said counsel was of the reversal of the judgment, and asking their advice and permission to correct an error of the bill of exceptions, and inasmuch as they did not give their consent, they supposed the pause was finally decided in their favor, or that if any thing was to be done, their said counsel would advise them in time to have it done, which he never did, and not knowing or suspecting the cause had been sent back from the Court of Appeals, they made no preparation for trial, nor were they undeceived until they received a letter from Mr. Wickliife, that a verdict had passe^ against tjiem in his and their absence, They hope^ and expect to prove upon another trial among other things, by several respectable witnesses, “that said Legrand did not attend at the Blue Licks on the 15th day of February, 1817, ready to comply with his part of the contract,’’---“and that he was not there at all on that day, and to show from other facts and circumstances, that he was not able or ready to comply with his part of the agreement, at any time thereafter; during the shipping season of that year.”
Facts admit* ted of the occurrences in court.
“The following statement of facts in relation to what toolp place in court, touching this pause at this term, is admitted to be trap, viz: Miss Howard died on Tuesday, and the indulgence asked by Mr, Wickliife and granted by the court, was for that day and tlie next, which was Wednesday; on Thursday morning Mr. Wickliife appeared in court, and attended to business some time and departed without any intimation to the court that he desired farther timp. This suit had been previously cplled and laid over for Thursday; and when it was called up on Thursday, the1 plaintiff’s attorney expressed an anxiety to have it tried during the week, bpt said he did not wish to incommode Mr. Wickliffe. M1’- Hawes, the attorney of the defendants, who was in court When the suit was first called and laid oyer, said he was ready to take up the suit, and the parties accordingly wpnt to trial, and Mr. Hawes stated on the trial, the defendants did not,;.attend further ip defence of the suit, because Mr. Wickliffe had written them that the plaintiff could not recover under the decision of the Court of Appeals.”
statement of Maj. Barry,
H£úntlff,s ev-°n *
Motion for a over"
Tbc defendants farther relied on the statement of Wm. T. Barry, that on Thursday morning, Mr. Wickliffe, after some business had been transacted in court, spoke to him, and informed him Mrs. Par-her was ill, and on account of the recent death of her sister, Mrs. Howard, he felt it his duty to go out immediately, and requested it to be mentioned to the court as an excuse for his absence. That upon the calling of the suit, he suggested the cause of Mr, Wickliffe’s absence, and either stated, it to. the court, or was about to do so, when Mr. Hawes said he considered the suit was settled by the opinion-, of the Court of Appeals, and apprehended no difficulty on the trial of it.
On the trial of the cause, the plaintiff examined William Morton, who stated, that on the morning of the 14th of February, 1817, he paid the plaintiff $4,722 in ,Lexington, for the purpose of meeting the contract now in suit; that he knew nothing of the plaintiff’s being at the Lower Blue Licks on the 15th of February, 1817, or of his offering the money on that day to the defendants, except that hq left Lexington on the morning of the 14th for that purpose; that he paid Legrand on the 4th. March-, 1817, $1,000; on. the 18th of same month, $3,000,. and on the 19th, $9,000. The plaintiff read the receipts of Wm. Boles, endorsed on the covenant, for $400, on the 15th February, 1817; $800 on the 9th of March, and $778 on the 5th June, 1817, and introduced witnesses who stated the prices and enhanced value of the articles mentioned in the covenant, from its. date to the 15th February, 1817.
Upon this evidence the defendants counsel moved the court to instruct the jury to find as in case of a non suit, which the court refused to do.
The defendants introduced a writing signed by Legrand, of the 5th June, 1817, by which he said:
“I intend instituting suit against Martin Baker, Wm. Boles and Christian Profather, on a contract for the deli very "ÍÍ flour &c. Boles’ name is included because requisite by the forms of law. But inasmuch as he complied with his part of the contract, *242 iii furnishing such articles as he individually, was expected to furnish, the deficit being with the others, I shall look to the others concerned, and will not re» quire said Boles to pay any part of the damages which i may recover.”
Instructions moved by defendant overruled.
instructions given by the court.
Further instruction of defendant oVerruled.
Legrand’s letter to defendants read on (he motion for a new trial.
The defendants moved the court to instruct the jury: First, That if they find from the receipt, and the release, that the payments to Boles made by Le-grand, were equal to and for Boles’ proportion of the covenant, they should find for the defendants.
Second, That the said instrument from Legrand to Boles, operates as a release as to him, and that they cannot, as to him, find any damages.
Thirdly, That the jury cannot find damages as to one or more, without finding damages against all.
The court refused the instructions in the words as asked, but instructed the jury7, that so far as the writing from Legrand to Boles conduces to prove a partial compliance with the covenant- by Boles, one of the defendants, it is evidence — so far as it is asked to operate to exonerate the defendants entirely from liability, for non performance, it is not evidence: — * that the jury must find the damages, if any, for plaintiff, against all the defendants.
The defendants then moved the court to instruct the jury that the said receipt of the defendant Boles to the plaintiff, on the contract sued on, could not charge the defendants with the receipt of the money therein receipted for: — the court refused to give it,
The defendants on the motion for a new trial, read letters from Legrand to Boles: one of the 16th March, 1817, in which he acknowledges the receipt of Boles’ letter of the 14th, covering the bill of lading of the cargo of the Win. Boles, Fulton master, for 312 barrels of flour; and, that he would start down to-morrow and call and settle with Bolesj hoping Baker’s and Profatlier’s cargo’s will soon be ready; another of the 21st February, 1817, dated at Lexington, directed to Boles, informing him that he had sent three reams of paper for packing the balance of Baker’s flour, which is sufficient for 300 barrels, but should that quantity not remain un* *243 packed, the balance, after using what was necessary for that parcel, to be delivered to Profather for same purpose, desiring Boles to show him how to use it, and to request him to use it, expressing also, a hope that they were forwarding the flour and pork; that he wished Boles’ load and one more to start at the same time; “as soon as Baker’s are ready I will be down and settle, and get them off together. Did you say I must send you or Mr. Baker, a cable and stern fast?”
Third trial; verdict for defendants Overruled; J udgment and exceptions.
This court first enquires into the propriety of the order granting the first new trial, and if that be erroneous, orders a judgment on that verdict.
Opinion of this-eourt on thb first trial of a cause here cannot be revised in the same canse, on its being af-terwards brought here the second time.
The bill of exceptions, certifies the whole of the evidence on the trial, and on the motion for a new trial. The aforegoing is the substance, and exhibits the material facts and points in the trial, and in the motion for a new trial, so far as they depended pij matters out of the record.
Upon the last trial, the defendants obtained a verdict and judgment; and the whole evidence is again spread upon the record, with hills of exception to opinions of the court, upon motions for instructions to the jury, and for refusing a new trial on the motion of the plaintiff.
But as the established practice of this court is, to inquire into the propriety of the order for a new trial, and to render judgment according fo a verdict and judgment improperly set aside upon motion for a new trial, it is a previous question, whether ¡the trial at September term, 1822, ought to have been set aside; until that (question is settled, it is useless to travel into the trial'of 1823.
It is worthy to be remembered, that neither in the first nor in the second trial, nor in the motion to set aside the second verdict, nor on the third trial is to be found any pretence, or color of evidence, that the defendants have performed their part of the agreement, or tendered a performance, either before or at the day, or at any time whatever. Their whole and sole defence is, not under the plea of cow enants performed^ nor under a tender of performance, but under the plea traversing the readiness of the plaintiff to perform his part.
.Held theevi-d?rtedSthe verdict having conduced tó prove Le-liness^toper-form on ¿is part.
field writing to one'of' the covenanters, stating, that Kverecfhñf6" part .if the property, though all wou](j be sued, the others FFiFoked t f0er °hedam-ages, was not a release,
*244 The former opinion of ibis court is predicated upon the issue, joined upon the traverse of the readiness of the plaintiff, as material. That opinion is not now the subject of revision. It is res adjudicata in this suit, and must stand.
On the trial at September term 1822, the plaintiff on his part, read the covenant set forth in the decla-nation ar,d admitted b}r the pleadings, he gave -ev" Menee of the enhanced value of the articles mentioned in the covenant, between the date of the conj^act, and the time when they were to have been delivered; there was no evidence of delivery, or of tender of the articles; he went farther, he procree! by Win. Morton, that on the 14th day of February 1817, he paid to plaintiff $>4,722, for the purpose of meeting this contract; that the plaintiff left Lexington on the morning af that day, for the purpose of going to the Blue Licks, and he proved other large sums paid by him to Legrand within one hundred and twenty days; and he read in evidence, the receipt of Boles, one of the defendants, for money prdd on the contract, on the 15th of February 18Í7. This evidence certainly entitled the plaintiff to a v.erdict, and the motion to non-suit the plaintiff upon this evidence, was very properly overruled. From the facts given in evidence, the jury might well have inferred the readiness of Legrand, and his attendance to perforin his part of the agreement, as averred in the declaration, and denied by the plea of the defendants; looking to the issue so formed, and in the absence of any and all evidence that the defendants had delivered, or tendered the delivery of the flour, pork and lard, as stipulated on their part, the jury did find the issue for the plaintiff.
The next .subject in the order of the trial, is the writing of June 1817, given by Legrand to Boles, effect and consequences of that writing, com~ pared with the receipt of Boles to Legrand, on the covenant, were presented for the consideration of the court> by the motion for instructions to the jury, That writing was properly rejected by the court as evidence of a release of the action, or as a release of Boles, in the sense in which the defendants urged i¿
Evidence of FnFfeFsadmis" sible, under*” the plea of covenants performed, in ailtlsati°n of aamaSes-
One joint ob-ligee may re-ce*v®ti)e money fthey divide it a-monsthem-obligor not concerned,
Verdict ap-FFidenc°nthe
It is ’the same writing which the defendants first pleaded 'as a release and abandoned. Upon the issues joined, evidence of release of the or damages, or of the covenant, was inadmissible. But the writing upon its face was no release; to give it .that effect would contradict the very face and intent ef the paper. It recited that Legrand intended to institute a suit upon the covenant, not to release or abandon it; it declared that he intended to sue all" the part.ies, because, “requisite by the forms of law,” not that he intended or designed to place himself in a condition not to sue; and simply declared, that as Boles had furnished such articles as amounted to his individual share or part, the plaintiff wmild look to the others for the damages recovered for breach.
It was evidence of part performance, and as such, was admissible evidence in mitigation of damages, and that effect the judge gave it explicitly in his instructions; the judge would have erred, had he allowed to it other or greater effect,
The receipt of Boles, for the money, endorsed upon the'covenant, was equal to the receipt of all, they were joint undertakers and covenantors, each covenanting for the whole performance, each liable for the others, anclas to this contract, were joint participators and partners. The payment to one was payment to all, the receipt of one as to thexnpney mentioned in the contract bound all. The court, therefore properly refused to instruct, that the said receipt of Boles on the contract, could not charge the other defendants with the receipt of the money expressed in the receipt. A payment to one is payment to all; it is difficult to conceive how, in practice, a man can make payment of the same sum, on the same contract, to tiiree several persons; one must receive for all; the division of the money is a matter with themselves; to he settled equitably among theipselves.
•So far as the .evidence and instructions of the court, in the progress of the trial, deserve consideration on the motion for a new trial, there is nothing *246 to authorize the setting aside of the verdict. The evidence given, entitled the plaintiff to a verdict, the instructions of the court left the consideration of damages fairly and properly to the jury; the jury have found both issues for the plaintiff, and the evidence well warranted them in so finding.
Principle on which the damages for breach of the covenant are recoverable, and the measure.
Surprise — in what it consists.
As to th,e damages being excessive, there is'no complaint, it was not a cause urged, neither in the court below nor here; neither is there any thing in the evidence, compared with the finding, to war. rant such a complaint. The plaintiff showed the covenant and the breach by the defendants; no col- or of performance, or tender of performance, was given in evidence by the defendants, nor excuse for non-performance. The plaintiff, by application of his time, skill, means and capital, in a commercial adventure, had laid the foundation of a fair commercial profit upon his means and money so engaged in this contract; the defendants, by their breach of covenant, have deprived the plaintiff of the direct and immediate profit which would have resulted to him, from performance by the defendants; and by so doing placed themselves in the condition to take advantage of the increased price of the articles, above the contract price, between the time of the contract and the time for delivery. Whether they did receive that profit, is not the inquiry, it is enough for the plaintiff, that their breath of the contract deprived him of the profit, and allowed them to reap it, if they ever had the articles ready to be delivered according to contract. Tire laws guard and obstruct the avenues to such breach of faith in contracts, by rendering the violators responsible for the damages; thereby cutting off the temptations to such violations of good faith, and trite performance of contracts.
It remains to consider the ground of surprise upon which the motion for a new trial was bottomed. The surprise involves two considerations: the defence of which, the defendants have been debarred, and which they desire to be permitted to make inaiiother trial; secondly, the circumstances which *247 prevented that defence from being used on the trial already had.
Evidence of-a new trial, examined.
Ignorance of taeir c.ttor-ne.ys, of ¡he st“leJ!efpn sufficient1 to™" authorise a now tvia3'
The affidavits do not pretend, that any tender the articles was ever made at any time; that the defendants were ever ready, willing, or offered or intended to deliver them at any time, before, at, or after the 15th of February, constitutes no part of the proposed defence. The letters of Legrand, used on the motion for a new trial, evince an anxious desire on the part of Legrand to accept the articles even after the day stipulated. These letters, of the 21st of February, and of the 16th March, 1817, show Legrand’s urgency, even then, to have the articles delivered, as late as the 16th of March, he accepts a part of the articles from Boles, according to the bill of lading enclosed in Boles, letter of the 14th of March, and expressing a hope, that Baker and Profathers' cargoes will soon be ready; the proof of the enhanced price of the articles, explain and confirm this anxiety. As to so much as was received from Boles, it was after the day appointed, the subject was before the jury, and even a remittitur of one third of the damages, is entered after verdict on this very account. The affidavits allude exclusively to their ability to prove that Legrand was not at the Blue Licks on the 15th of February, 1817, ready to comply on his part, that he was not there at all, on that day; this they propose to prove by several witnesses; also “to show from facts and circumstances,” that Legrand was not able orreadyto comply with his part of the agreement, at any time thereafter, during the shipping season. That they ever offered him the articles at any time whatever., is not stated in the affidavits, nor proposed to be proved.
The circumstances relied upon to excuse the failure to make the proper defence, are the ignorance of Mr. Wieltliffe, that the caire had beer, remanded by the court of Appeals, and docketed for trial in the circuit court; the ignorance of Mr. Hawes that there was a variance between Mr. Morton’s testimony as actually given on the first trial, and the state-tpent of it as set down in the bill of exceptions; Mr. Wickliffe’s absence from court on the second trial.
Ignorance of part of the counsel, or part of the defendants, of a fact, until discovered on the trial, before known to the others, can constitute no ground for a new trial.
Mr. Wiekíiffe and Mr. Hawes, were both of court-' sel for the defendants; the pleas of the defendant’s are signed by both; at the first trial both were present, conducting tiie defence. It appears by the opinion of the Court of Appeals, as sent clown and recorded in the circuit court, that it was pronounced on the third of October, 1821. It is fairly to be inferred from Mr. WicklifFe’s affidavit, that he received the answer of his clients refusing to correct the mistake* shortly after the close of the term; the opinion was carried down and recorded at the March term of the circuit court, at the June term the case was continued, and the trial was had at September term, 1822. Mr. Hawes was not ignorant that the opinion was entered, and the cause re-docketled in the circuit court. Mr. Wiokliffe and his clients, and Mr. Hawes were hound to notice the progress of the case, in the court of Appeals, and in the circuit court. The ignorance of Mr. Wiokliffe and his clients, as to the final decision of the Court of Appeals, and the progress in the circuit court, under the circumstances detailed in the affidavits of Mr. Hawes and Mr. Wiekíiffe, and during the length of time from’October, 1821, to September, 1822, must be considered as negligeutia crassa. The defendants must abide their own and their attorneys’ negligence on this subject. The case of Patterson vs. Matthews, (3 Bibb, 80) is in point.
As to the mistake committed in stating Mr. Morton’s evidence in the hill of exceptions oil the first trial, it consisted in this, Mr. Morton on the first, as well as on the second trial, stated his payment to Legrand of $4,722, and his leaving Lexington for the Blue Licks, as of the 14th of February, 1817; the bill of exceptions states the payment as of 14th of March, 1817, and leaves the time of Legrand’s setting out for the Blue Licks uncertain. This variance Mr. Wickllife knew, his clients knew it also, in 1821, and refused to correct it. Mr. Hawes' ignorance that such variance existed, can furnish no excuse to his clients. Mr. Hawes himself, heard what Mr. Morton’s statement was in court, he was of counsel on the first trial, he did not suspect that the bill of exceptions had misstated it. It certainly *249 was not the duty of the plaintiff’s counsel to cor? rect tbe misapprehensions (if any) of the defend* ant’s counsel, on this subject. After the use which tiie defendants had made of the mistake, they had no claims upon the plaintiff or his counsel, to be in* formed for what cause the decision of the Court of Appeals had been rendered in favor of the defendants. The counsel for the plaintiff had no cause to suspect that the defendants or their counsel were ignorant of the mistake. It would be going very far, to say that the defendants shonjd avail themselves of tlje ignorance of one of their att.ornies of this mistake, known to themselves, and to their other, of which, in fact, they had profited so materially, by refusal to correct the mistake. We cannot proceed upon such excuses aucl distinctions. As well might the defendants ask a new trial because a fact known to one of them, was not known to all. It is the duty of co-defendants, and of the attornies for the same party, to consult the one with the other-, and communicate the facts known to any one of them, if the/ fail to do so, they must abide the conspquences of such gross negligence as appears here.
Ignorance of one of the counsel, of facts known to the other, and which both of them and the party were bound to notice, can be no ground for hew trial.
Air. Wickliffe’s feelings for his connexion, who was ill, are praiseworthy; but under the circumstances which transpired, and set down as-admitted to be true, in relation to what took place in court, the absence of Mr. Wickliffe can furnish no ground for a new trial.
If Mr. Wickliffe had been present, he could have done nothing but move for á continuance. This, the court ought not to have granted under the circumstances. No subpoena for witnesses had been taken, no exertions to procure the attendance of witnesses had been made; on the first trial the defendants introduced no witness; Mr. Wickliffe’s ignorance of the final decision of the Court of Appeals in fall 1821; bis ignorance of the production of the opinion and mandate and record of it at the March term of the circuit court, 1822; his ignorance of the docketing of the case from that time until September, all of which were matters of record, and of which his clients and himself were bound to take *250 notice, could have furnished no legal excuse, for want of preparation. But especially, this want of preparation could have been no cause for a new trial, after Mr. Hawes had, in his affidavit disclosed the fact, that he “had read the opinion of the Court of Appeals, and deemed it conclusive;” and had stated on the trial, “that the defendants did not attend further in defence of the suit, because Mr. Wick-liife had written them that the plaintiff cannot recover under the decision of the Court of Appeals.” Mr. Hawes, the attorney for defendants, who liad appeared originally, and then, did not choose to ask or accept indulgence until Mr. Wickliife returned, but professed “he was ready to take up the suit,”
This cause came formerly before tbis court, on appeal by the defendants. The evidence was then before the court, upon the bill of exceptions, it was the mistake in setting down the testimony of Mr. Morton, which caused the reversal. Had his testimony been truly stated, as given by him on that trial and on this; proving the payment to Legrand, of the money on the 14th of February, for the purpose of complying with this contract, and his starting on that moraine; for the Blue Licks, the evidence would have conduced to show an ability in Legrand, and an intention to comply on his part, and from the facts, the jury might have inferred his arrival at the Blue Licks on the 15th of February, in time to comply with his part of the agreement; and thus, the issue on that plea, being found for the plaintiff, and no evidence whatever, being given by the defendants, to maintain their plea of covenants performed, the verdict ought not to have been set aside. But when that bill of exceptions referred the payment to Legrand, and his starting to the Blue Licks the 14th of March, it could not, in any degree conduce to prove the readiness and arrival of Legrand at the Blue licks, on the 15th of February preceding; and of course, such evidence ought to have been excluded, as improper and incompetent.
Opinion on the evidence.
Mandate.
Hoggin and Loughborough, for appellant; Wicklijfe, for appellees.
The first trial was in September 1819, the second was in September, 1822; after this delay and reversal, produced by a slip, which the defendants had refused to correct; after two verdicts without any witnesses at either trial on their part, the court ought not to have set aside the verdict to let in the evidence proposed.
it seems to this court, that the new trial ought not to have been granted to the defendants; but that the judgment of September term, 1822, ought to have been suffered to stand as entered.
It is, therefore, considered by the court, that the judgment of the circuit court, in setting aside the verdict and judgment at September term, 1822, and awarding a new trial, and all subsequent proceedings be reversed, and that the cause be remaded to that court, with direction to enter judgment according to the verdict and remittitur of September term, 1822.
And it is further considered, that the plaintiff re» cover of the defendants his-costs in this behalf expended.